Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br>**Kody Allen Albrecht**,<br>　　　　Debtor. | Case No. 20-33153-dwh7 |
| **Kody Allen Albrecht,**<br>　　　　Plaintiff,<br>　v.<br>**Rudy Thompson**,<br>　　　　Defendant. | Adversary Proceeding No. 21-03061-dwh<br><br>**MEMORANDUM DECISION**[1] |

**I.　Introduction**

I held the trial in this action on October 12, 2022. For the reasons that follow, I will dismiss it for lack of jurisdiction.

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION

In this decision, I refer not just to papers filed in this action, but also to some filed in the chapter 12 main case of Albrecht Farms LLC (Farms), No. 20-30452, and in the chapter 7 main case to which this action relates, that of Kody Albrecht (the plaintiff in this action), No. 20-33153. References to papers filed in the main cases will include the case number, as well as the paper's ECF number; references to papers filed in this action will include just the ECF number.

## II. Facts

Before the petition date in Albrecht's current chapter 7 case, he was the member of Farms, a limited liability company. In 2015, Farms entered into a transaction with defendant, Rudy Thompson. The transaction is embodied in a document entitled "Farm Lease," which describes a lease of land and improvements from Thompson to Farms.[2] In February 2020, Farms' lawyer sent Thompson a letter, taking the position that the lease actually was not a lease but a land-sale contract.[3]

A few days later, Farms filed its chapter 12 petition in this court.[4] Farms' schedules listed the lease.[5] That case was dismissed in September

---

[2] ECF No. 66-2, Trial Exhibit (Tr. Ex.) 102.
[3] ECF No. 66-3 Tr. Ex. 103.
[4] ECF No. 66-4 Tr. Ex. 104; No. 20-30452 ECF No. 1.
[5] ECF No. 66-4 Tr. Ex. 104 at 33; No. 20-30452 ECF No. 1 Sch. G item 2.3.

2020.⁶ According to a document filed with the Oregon Secretary of State in December 2020, Farms was dissolved on November 9, 2020.⁷

On November 18, 2020, Albrecht filed his current chapter 7 case.⁸ His schedules disclosed his ownership of Farms, which he listed as worth $0.⁹ He also scheduled, as if it were his own property, "Accounts Receivable for Albrecht Farms LLC" with a value of $698,000.¹⁰ He received his bankruptcy discharge in February 2021.¹¹ In September 2021, the initial chapter 7 trustee filed a report of no assets,¹² and the case was closed the same day.¹³

In May 2021, while Albrecht's bankruptcy case was pending, he executed a "Conveyance of Interest" purporting to transfer Farms' interest in Thompson's property from Farms to Albrecht personally in exchange for $5,000. The document doesn't discuss the nature of the interest in the property—whether it was a lease or otherwise—but says that Farms conveyed "[a]ll interest" in the property to Albrecht.¹⁴ It's undisputed that Albrecht did not mention this transfer to the chapter 7 trustee in Albrecht's then-pending bankruptcy case. There is also no evidence to contradict the

---

⁶ No. 20-30452 ECF No. 149.
⁷ ECF No. 66-8 Tr. Ex. 108.
⁸ No. 20-33153 ECF No. 1.
⁹ No. 20-33153 ECF No. 1 Sch. A/B item 35.
¹⁰ No. 20-33153 ECF No. 1 Sch. A/B item 38.
¹¹ No. 20-33153 ECF No. 23.
¹² No. 20-33153 ECF No. 44.
¹³ No. 20-33153 ECF No. 45.
¹⁴ ECF No. 66-11 Tr. Ex. 111 at 15.

Page 3 – MEMORANDUM DECISION

representation contained in the "Conveyance of Interest" that he paid $5,000 to Farms.

This action began in state court in March 2021—before the conveyance from Farms to Albrecht—when Farms sued Thompson, seeking various types of relief, including an order requiring Thompson to sell the property to Farms.[15] After the conveyance, Albrecht was substituted as plaintiff.[16] In December 2021, after the state-court litigation had been pending for about seven months, this court reopened Albrecht's bankruptcy case on the motion of the United States trustee, who appointed a new chapter 7 trustee.[17] Although the new trustee never formally intervened in the action, he filed a notice of removal in this court that same month.[18]

In February 2022, after removal, Thompson filed a third amended answer, which includes five counterclaims and a third-party claim. The first counterclaim is Thompson's invocation of state law to set aside Farms' conveyance to Albrecht;[19] the second seeks a declaratory judgment;[20] the third is for breach of contract;[21] and the fourth is for judicial foreclosure of the land-sale contract.[22] The fifth counterclaim is Thompson's request to

---

[15] ECF No. 1.
[16] ECF No. 69-4 Tr. Ex. 4; ECF No. 1.
[17] No. 20-33153 ECF Nos. 48, 50.
[18] ECF No. 1.
[19] ECF No. 14 at 6–7 ¶¶ 25–28.
[20] ECF No. 14 at 7 ¶¶ 29–30.
[21] ECF No. 14 at 7–8 ¶¶ 31–34.
[22] ECF No. 14 at 8–10 ¶¶ 35–40.

Page 4 – MEMORANDUM DECISION

revoke Albrecht's bankruptcy discharge.[23] The third-party claim is Thompson's request for a determination that neither Jessie Albrecht nor Albrecht Family Farms LLC has any interest in the property.[24]

In March, Albrecht moved to dismiss this action for lack of federal subject-matter jurisdiction.[25] At a hearing in May, and for reasons that I need not repeat here, I agreed that the claims in Albrecht's complaint could have no possible effect on administration of the bankruptcy estate, so I granted his motion and dismissed his claims—but not Thompson's counterclaims and third-party claim.[26]

In August, Albrecht filed a motion for partial summary judgment (on his claims that I had already dismissed).[27] At a hearing later that month, I explained my tentative view that the court also lacked subject-matter jurisdiction over Thompson's first through fourth counterclaims and his third-party claim. None of those claims arise under bankruptcy law, and their resolution could not affect estate administration. Neither lawyer disagreed.

The trial addressed Thompson's fifth counterclaim seeking revocation of Albrecht's discharge, which then appeared to be within the court's jurisdiction because the claim arises under the Bankruptcy Code. At trial,

---

[23] ECF No. 14 at 10 ¶¶ 41–47.
[24] ECF No. 14 at 11–12 ¶¶ 48–52.
[25] ECF No. 20.
[26] ECF No. 41.
[27] ECF No. 55.

Page 5 – MEMORANDUM DECISION

Thompson acknowledged that he never held a claim against Albrecht personally before Albrecht filed his bankruptcy petition.[28]

## III. Jurisdiction

The ostensible basis of my jurisdiction over the discharge-revocation counterclaim is 28 U.S.C. § 1334(b), because that claim arises under 11 U.S.C. § 727(e), part of the Bankruptcy Code. I further discuss jurisdictional issues below.

## IV. Analysis

### A. *Jurisdiction over fifth counterclaim*

Most of the argument and evidence at trial focused on whether Albrecht committed fraud in one of three ways: by understating the value of his interest in Farms and failing to disclose Farms' interest in the property, by continuing to exercise control over Farms when his interest in it was property of the estate, or by failing to disclose his acquisition of Farms' interest in the property. He disputed that any of these acts demonstrated that his discharge had been "obtained through the fraud of the debtor," but he also raised a more fundamental argument that I must address first: that Thompson is not a creditor.

Albrecht raised this argument to demonstrate that Thompson lacks statutory standing to prosecute a claim for discharge revocation, because 727(e) authorizes such a motion only by "[t]he trustee, a creditor, or the

---

[28] ECF No. 73 Oct. 12, 2022, audio recording at approximately 1 hour and 55 minutes.

United States trustee." Albrecht did not expressly argue that Thompson lacks constitutional standing to prosecute this claim. But because constitutional standing is a prerequisite for my exercise of jurisdiction, I must consider both constitutional and statutory standing.

Here, both forms of standing depend on the same facts, so it's not necessary to consider them separately. That's because Thompson's purported status as a creditor is the only way in which he could have constitutional standing. Constitutional standing requires Thompson to show that he has suffered an injury in fact that is fairly traceable to conduct by Albrecht and that Thompson's injury is likely to be redressed by a judgment in his favor.[29] Unless Thompson can show that he had a prepetition claim that has been discharged, a judgment revoking Albrecht's discharge would have no effect on Thompson, and Thompson lacks constitutional standing. Similarly, under the Bankruptcy Code, a "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]"[30]

Both forms of standing, therefore, depend on the same question: does Thompson hold a claim against Albrecht that arose on or before the petition date?

---

[29] Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).
[30] 11 U.S.C. § 101(10(A)).

Because creditor status depends on the putative creditor holding a prepetition claim, I won't consider Thompson's argument that Albrecht became liable on Farms' prepetition obligation to Thompson when Albrecht acquired the interest in the property. That event happened after the petition date, so any claim that arose from it was unaffected by the discharge.

At trial, Thompson also argued that Albrecht became liable on Farms' debts, including its debt to Thompson, when Albrecht dissolved Farms before the petition date. I disagree. Dissolution of an LLC does not automatically cause its members to become liable for its debts. Oregon law prescribes a procedure for giving notice to known and unknown holders of claims against an LLC after its dissolution.[31] If, after that procedure has been followed, claims remain that haven't been satisfied or barred after distribution of asset-liquidation proceeds to members, it's possible for the claimants to collect from the LLC's former members to the extent of distributions to the members.[32] But the filing of articles of dissolution does not by itself make the members liable for the LLC's debts, and the members continue to enjoy limited liability during the winding-up process.[33]

Thompson, therefore, does not hold a prepetition claim against Albrecht, although I don't rule out the possibility that Thompson might hold a postpetition claim based on Albrecht's postpetition acquisition of Farms'

---

[31] *See* Or. Rev. Stat. §§ 63.641, 63.644.
[32] Or. Rev. Stat. § 63.645(2).
[33] Or. Rev. Stat. §§ 63.165(1), 63.637(1).

Page 8 – MEMORANDUM DECISION

interest in the property. Because Thompson doesn't hold a prepetition claim, his rights are unaffected by the discharge. Thus, he lacks both statutory standing, because he is not a "creditor" under 727(e), and constitutional standing, because a judgment revoking the discharge would not benefit him.

### B. *Jurisdiction over remaining counterclaims and third-party claim*

For the reasons I gave at the August hearing, I conclude that the court lacks subject-matter jurisdiction over Thompson's first through fourth counterclaims and the third-party claims.

## V. Conclusion

Having determined that Thompson has no standing to prosecute his fifth counterclaim and the court lacks subject-matter jurisdiction over the other counterclaims and the third-party claim, I now deny Albrecht's partial-summary-judgment motion and conclude that the court has no jurisdiction over this action. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."[34]

Because the court lacks jurisdiction, I won't express any opinion on the merits of Thompson's discharge-revocation counterclaim.

---

[34] Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998) (internal quotation marks and citation omitted).

Page 9 – MEMORANDUM DECISION

I will enter a separate judgment dismissing this action.

# # #